UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DELIA FLORES,<br><br>*Plaintiff,*<br><br>v.<br><br>CHIME FINANCIAL, INC. f/k/a 1DEBIT, INC., and THE BANCORP BANK,<br><br>*Defendants.* | Civil Action No.: _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Delia Flores, Plaintiff herein, by her undersigned attorneys, Schlanger Law Group LLP, alleges and complains of Defendants Chime Financial, Inc. f/k/a 1Debit, Inc. ("Chime"), and The Bancorp Bank ("Bancorp", and collectively "Defendants") as follows:

**PRELIMINARY STATEMENT**

1. Deli Flores ("Plaintiff" or "Ms. Flores") is a victim of a sinister identity theft, fraud, computer hacking and extortion scam.

2. The perpetrators, who are unknown to Ms. Flores, wreaked havoc on her finances by, among other things, unlawfully transferring funds between Plaintiff's Chime savings account and her Chime checking account ending in 8546 (the "Account"), transferring funds from Ms. Flores's bank account to unknown accounts without Plaintiff's consent, fraudulently intercepting her bank account information, and using her Chime debit card for several unauthorized transactions.

3. Ms. Flores promptly and repeatedly disputed the charges with Chime and Bancorp and provided Defendants with a police report regarding the thefts.

4. Without legitimate basis, Defendants refused to credit Ms. Flores's Accounts for the stolen funds and unauthorized debit card charges as required by law.

1

5. Plaintiff brings claims against Defendants for violations of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq.*, and New York General Business Practice § 349 ("NYGBL § 349").

## JURISDICTION AND VENUE

6. The Court has jurisdiction pursuant to 15 U.S.C. § 1693m(g).

7. Supplemental jurisdiction exists for the state law claim pursuant to 28 U.S.C. § 1367.

8. Jurisdiction over Plaintiff's claim for declaratory relief is conferred by 28 U.S.C. § 2201.

9. Venue is proper in this District because Plaintiff resides in this District, a substantial part of the events and occurrences underlying this litigation occurred within this District, and Defendants regularly conducts business here.

## PARTIES

10. Plaintiff Delia Flores is a natural person and citizen of New York residing in New York, New York.

11. Ms. Flores is a "consumer" as defined by the EFTA, 15 U.S.C. § 1693a(6). Her checking, savings and debit card accounts with Chime were used for personal, family, or household purposes.

12. Defendants Chime and Bancorp are national banking associations formed under the laws of the United States and were, at all times relevant to this Complaint, financial institutions as defined by the EFTA, 15 U.S.C. § 1693a(9), and a "creditor" as defined by 15 U.S.C. §1602(g).

## FACTS

13. On December 16, 2020, upon checking her account, Plaintiff noticed that she had not yet received her unemployment check. During her review, she also noticed that there was an un-

authorized transfer in the amount of $2.00 from her Account to an unknown person named "Luis P."

14. Ms. Flores immediately called Chime's customer support to inform them of this issue. In the midst of the call, she saw a series of transactions go through her account.

15. During the call, the Chime representative informed Ms. Flores that her Account was going to be frozen while they investigated.

16. Shortly thereafter, Plaintiff received a slew of texts and emails from Chime notifying the Plaintiff of changes to her Account.

17. Specifically, the texts detailed several unauthorized changes to Ms. Flores contact information, the confirmation of an unlawful transfer of funds from her Chime savings account to her checking account, and the closing of her savings account.

18. As a result, due to her fear that her account would be completely depleted, Plaintiff used the check creation feature on her Chime app to send herself a $5,000.00 check for the majority of her funds in the Account in an effort to keep whoever infiltrated her account from accessing it.

19. Additionally, Ms. Flores decided to email Chime regarding all the fraudulent activity occurring with her Account despite being told it was frozen.

20. After several back-and-forth email exchanges and calls between Plaintiff and Chime in which Ms. Flores complied with all of Chime's requests for information proof of identity, Plaintiff decided to reach out to Bancorp for further assistance.

21. She noted in the emails from Chime that Bancorp was listed as the company in charge of issuing debit cards for Chime and decided to search online for contact information.

22. On December 17, 2020, after finding Bancorp's customer service email online, Plaintiff emailed said Defendant informing them of the issues she was having with her Account.

23. Bancorp responded to client on December 18, 2020 requesting additional information which Plaintiff promptly provided.

24. The next day, upon receipt of Plaintiff's information, Bancorp stated that while they were in fact in charge of issuing the bank cards for Chime customers, they did not have access to Ms. Flores' Account. As such, they were going to forward her dispute to the appropriate department in Chime for further investigation.

25. That same day, Plaintiff determined that the fraudulent number and email that were changed for her Account actually belonged to her nephew, Edgar Suarez.

26. At no point did Plaintiff authorize Mr. Suarez to access her funds, use her account or take any action whatsoever on her behalf.

27. After finding out her nephew was somehow linked to the fraudulent transactions and changes to her account, Ms. Flores presented herself at the New York City 20th Precinct and filed a formal complaint against him on December 19, 2020.

28. From December 19, 2020 to December 31, 2020, Plaintiff continued constant contact via phone and email with Chime and Bancorp regarding the issues with her account.

29. During this time, Plaintiff complied with both Chime's and Bancorp's request for documentation and information, including (but not limited to) dispute forms, a copy of the criminal complaint against Mr. Suarez, the contact information of the detective investigating the criminal matter against her nephew, and a Federal Trade Commission Identity Theft report also filed by Ms. Flores.

30. Additionally, upon receiving the $5,000.00 check she had requested on December 16, 2020, Plaintiff was unable to cash it due to Chime's having listed Chime's address on the check as the address of the payee (*i.e.* instead of Ms. Flores' address).

31. Defendants subsequently cancelled the check. This should have resulted in the money being available to Plaintiff.

32. However, Defendants then closed Plaintiff's account without re-issuing her a check for $5,000.

33. Instead, Defendants issued her only a check for $342.98 which is what would have been remaining in the account after withdrawal of the $5,000.

34. The $7,200.00 that was in the account prior to the thefts and closure of her account constituted Ms. Flores' entire savings.

35. As a result of Chime failing to credit her back the stolen funds as required by law and the loss of access to the remaining funds due to Chime's failure to issue her a proper check, Plaintiff began to suffer from increased anxiety to the point where she had to be examined and treated by a medical professional on December 23, 2020.

36. On January 6, 2021, having not heard anything from both Bancorp and Chime regarding her disputes, Plaintiff called Chime's customer service once more to inquire about her dispute.

37. She was informed by the representative that her case was denied unless Plaintiff could prove that Mr. Suarez was arrested, and that Chime was of the view that Ms. Flores was the one that made the purchases she was disputing on her Account.

38. Immediately, Plaintiff contacted the detective in charge of her case, Timothy Kraft, and was informed that they were going to follow up on a lead that could further prove up the case against Ms. Flores nephew.

39. Specifically, Mr. Kraft was able to locate the store in which Mr. Suarez had fraudulently purchased several electronics with funds from Plaintiff's Chime Account. There, he viewed captured video footage of Mr. Suarez making said purchases.

40. Mr. Suarez was arrested that same day, January 6, 2021.

41. On January 9, 2021, after receiving the police report confirming Mr. Suarez's arrest, Plaintiff forwarded it to Chime and Bancorp in further support of her dispute.

42. Despite the overwhelming evidence provided by the Plaintiff and numerous requests to further investigate the fraudulent activity on her Account, both Chime and Bancorp failed to overturn the denial decision on Ms. Flores' dispute and have not reimbursed her the stolen funds to this day.

43. As a result of Defendants' misconduct, Plaintiff currently suffered anxiety, depression, and other serious health related issues for which she is currently being treated and taking medication. In addition, her anxiety has caused unhealthy weight loss.

44. Due to lack of funds caused by Defendants' misconduct, Plaintiff is unable to rent an apartment or obtain stable housing.

## **FIRST CLAIM FOR RELIEF**
**(Electronic Fund Transfers Act, 15 U.S.C. § 1693 *et seq*.)**

45. Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

46. Per the EFTA, Regulation E, and Regulation E's Official Interpretations, Defendants bear the responsibility for unauthorized transfers and withdrawals like the present ones.

47. The EFTA caps consumer liability for unauthorized electronic fund transfers at $50 and the transactions at issue exceed that amount. 15 U.S.C. § 1693g(a).

48. Pursuant to the EFTA, 15 U.S.C. Sec. 1693f(a), Defendants must conduct an investigation of an authorized transaction once the consumer provides a minimum of information.

49. Specifically, the statute provides in relevant part that:

> [O]nce the consumer provides oral or written notice in which the consumer --
> **(1)** sets forth or otherwise enables the  to identify the name and account number of the consumer;
> **(2)** indicates the consumer's belief that the documentation, or, . . . the consumer's account, contains an error and the amount of such error; and
> **(3)** sets forth the reasons for the consumer's belief (where applicable) that an error has occurred,
> the financial institution shall investigate the alleged error, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within ten business days. Thus, once the account holder provides (1) the name and account number of the consumer; (2) indicates a belief that there is an error and (3) sets forth the reasons for the belief that there is an error, Defendants must ("shall") investigate.

15 U.S.C. Sec. 1693f –Error Resolution.

50. *The EFTA, Section 1693(f) defines "errors" broadly:*

> (f)  ACTS CONSTITUTING ERROR.--For the purpose of this section, an error consists of--
> (1)  an unauthorized electronic fund transfer;
> (2)  an incorrect electronic fund transfer from or to the consumer's account;
> (3)  the omission from a periodic statement of an electronic fund transfer affecting the consumer's account which should have been included;
> (4)  a computational error by the financial institution;
> (5)  the consumer's receipt of an incorrect amount of money from an electronic terminal;
> (6)  a consumer's request for additional information or clarification concerning an electronic fund transfer or any documentation required by this title; or
> (7)  any other error described in regulations of the Bureau.

See also, Regulation E, 12 C.F.R. § 1005.33 ("Procedures for resolving errors"); Official Interpretation of Regulation E, 11(b)(1) ("Notice of Error From Sender").

51. Where a Defendant determines after its investigation that no error has occurred it must provide an explanation and inform the consumer of certain rights.

52. Specifically, 15 U.S.C. Sec. 1693f states in relevant part:

> (d) Absence of error; finding; explanation
>
> If the financial institution determines after its investigation pursuant to subsection (a) or (c) that an error did not occur, it shall deliver or mail to the consumer an explanation of its findings within 3 business days after the conclusion of its investigation, and upon request of the consumer promptly deliver or mail to the consumer reproductions of all documents which the financial institution relied on to conclude that such error did not occur. The financial institution shall include notice of the right to request reproductions with the explanation of its findings.

53. Defendants have violated the EFTA by attempting to hold Plaintiff liable for unauthorized transfers, in violation of the EFTA's sharp limitations on consumer liability.

54. Defendants also failed to provide Plaintiff with a provisional credit during their "investigation", as required by the EFTA.

55. Moreover, once Plaintiff notified the Defendants that she disputed the unauthorized withdrawals, Defendants were required to conduct a bona fide reasonable investigation to determine if fraud occurred.

56. However, Defendants failed to conduct a reasonable investigation.

57. A reasonable investigation would have included review of one or more of the following items, which would have led to the Defendants concluding that fraud had occurred and would have revealed, inter alia, the following:

   a. Plaintiff did not authorize the disputed transactions;

   b. Plaintiff promptly reported the fraudulent transactions both verbally and in writing;

   c. Plaintiff has no history of making false or unverifiable fraud reports;

    d. Plaintiff has no history of irresponsible use of her account;

    e. Plaintiff identified the perpetrator both to Defendant and in a filed police report.

    f. The perpetrator was arrested.

    g. The police obtained video of the perpetrator making some of the purchases in question.

58. Furthermore, the EFTA places the burden of proof on the financial institution to demonstrate that challenged transfers were authorized or, if they were unauthorized, that the consumer can be held liable for them. 15 U.S.C. § 1693g(b).

59. This burden of proof cannot be and was not plausibly met with regard to the contested transactions and Defendants could not have plausibly concluded that the transfers were authorized.

60. In short, any reasonable investigation of these transactions would have resulted in Defendants' closing the accounts and crediting Plaintiff for the stolen funds.

61. Defendant also violated the EFTA in that it failed to issue her a written denial letter; failed to provide a written statement of the reasons for denial of her claim; failed to include with that written denial and explanation the statutorily required disclosure of her of her right to request the documents upon which Defendants had relied in reaching that conclusion, and by repeatedly requiring additional information (including written, signed submissions, supporting documentation, and proof of her nephew's arrest, etc.) as a condition of investigating her claim.

62. Defendants' acts and omissions set forth above constitute violations of the EFTA.

63. As a direct and proximate result of the Defendant's conduct, Plaintiff has suffered actual damages, including but not limited to past and future monetary loss, past and future mental distress, health problems, emotional anguish, and other damages that will be presented to the trier of fact.

64. As a direct and proximate result of Defendants' violations of the EFTA, Plaintiff is entitled to an award of statutory and actual damages as well as attorney's fees and costs.

65. Defendants did not conduct a good faith investigation regarding the stolen funds.

66. Defendants did not have a reasonable basis for believing the account was not in error.

67. Specifically, Defendant's conduct as set forth herein constitutes a failure to investigate in good faith and a failure to establish a reasonable basis for believing that Ms. Flores' account was not in error, and also constitutes a knowing and willful conclusion that her account was not in error when such conclusion could not reasonably have been drawn from the available evidence, and for this reason constitutes a violation of 1693f(e), entitling Plaintiff to treble damages in addition to all other relief sought herein .

68. In addition, Defendant's failure to provisionally recredit Plaintiff's account while investigating violates§ 1693f(e), entitling Ms. Flores to treble damages in addition to all other relief sought herein.

### SECOND CLAIM FOR RELIEF
**(Deceptive Acts and Practices Unlawful, NYGBL § 349 *et seq.*)**

69. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

70. In the course of its dealings with Plaintiff, Defendants have engaged in deceptive conduct in the conduct of business, trade, commerce or the furnishing of a service in this state and constituted a violation of §349 independent of whether Defendants' conduct violated any other law.

71. Specifically, but without limitation, Defendants' deceptive conduct included:

    a. Stating that it was permitted to condition issuance of a credit on the arrest of the perpetrator under applicable law;

b. Falsely alleging that it had performed a *bona fide* investigation into the fraudulent transactions; and

c. Falsely alleging that it had a basis to conclude that no fraud occurred.

d. Unlawfully charging Plaintiff for transactions she never authorized;

e. Failing to adequately investigate the dispute and correct Plaintiff's accounts by permanently reversing the unauthorized charges, while falsely claiming to have done an adequate investigation; and

72. Defendants' conduct as alleged herein is "consumer oriented."

73. Indeed, far from a "one shot transaction," Defendants deals with a large volume of customers who dispute unauthorized charges and routinely denies these charges without any basis.

74. Defendants' misconduct as set forth above is part of a recurring policy and practice of falsely alleging that it has performed *bona fide* investigations into fraudulent transactions and falsely alleging that it has a basis to conclude that no fraud has occurred on the accounts of those customers that submit disputes.

75. The Better Business Bureau ("BBB") has received hundreds of customer complaints relating to Chime's handling of identity theft and unauthorized charges. *See* Chime | Business Details | Better Business Bureau® Profile, *available at* https://www.bbb.org/us/ca/san-francisco/profile/mobile-apps/chime-1116-530173/complaints (last accessed May 25, 2020).

76. These policies and practices have the potential to be repeated with regard to a large number of consumers.

77. Each of these deceptive acts and practices is one that has a broad impact on consumers.

78. Due to these violations of NYGBL § 349, Plaintiff has suffered actual damages and is entitled to actual damages, treble damages, punitive damages, declaratory judgment that

11

Defendants has violated the statute, injunctive relief barring Defendants from henceforth committing the deceptive acts and practices set forth herein, costs and reasonable attorney's fees.

### THIRD CLAIM FOR RELIEF
**(Declaratory Judgment)**

79. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

80. Given Defendants' continued demand that Plaintiff pay the Unauthorized Charges, Defendants' conduct has created a real and reasonable apprehension of liability on Plaintiff's part.

81. Defendants' conduct constitutes a course of conduct that has brought Plaintiff into adversarial conflict with Defendants.

82. Plaintiff did not authorize the disputed transactions and therefore does not owe Defendants any money.

83. Plaintiff is entitled to and hereby seeks a declaratory judgment that she is not liable for the charges in question.

**WHEREFORE,** Plaintiff Delia Flores seeks judgment in her favor and damages against Defendants:

A. awarding Plaintiff actual damages, treble damages, statutory damages, punitive damages, costs, and reasonable attorneys' fees;

B. awarding Plaintiff injunctive relief;

C. entering a declaratory judgment that Plaintiff is not liable for the charges in question and Defendants' practices alleged herein are unlawful; and

D. such other and further relief as may be necessary, just, and proper.

**(continued on the next page…)**

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demands a trial by jury as to all issues so triable.

Dated: May 26, 2021

/s/*Daniel A. Schlanger*
Daniel A. Schlanger
Schlanger Law Group LLP
80 Broad Street, Suite 1301
New York, NY 10004
T: 212-500-6114
F: 646-612-7996
E: dschlanger@consumerprotection.net

*Counsel for Plaintiff*