# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DELIA FLORES,<br><br>                    *Plaintiff,*<br><br>          v.<br><br>CHIME FINANCIAL, INC. f/k/a 1DEBIT, INC.,<br>and THE BANCORP BANK,<br><br>                    *Defendants.* | Civil Action No: 1:21-cv-04735-RA |

---

## REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY THE PROCEEDINGS

---

SILLS CUMMIS & GROSS P.C.
101 Park Avenue, 28th Floor
New York, New York 10178
(212) 643-7000
*Attorneys for Defendants*
*Chime Financial, Inc. and The Bancorp Bank*

On the Brief:

    Tyler J. Kandel, Esq.
    Erin E. Barrett, Esq.

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ......................................................................................................................2

I. THE PARTIES ENTERED INTO VALID AND ENFORCEABLE ARBITRATION
   AGREEMENTS.............................................................................................................3

    A.    Delaware Law Should Be Applied To Determine Whether The Parties
         Have Agreed To Arbitration ........................................................................3

    B.    Ms. Srivastava Is A Qualified Witness ........................................................4

    C.    An Agreement To Arbitrate Exists Between The Parties ...............................6

        i.    Plaintiff had reasonable notice of the arbitration provision...........................7

        ii.    Plaintiff evinced her assent to the arbitration provision by
           continuing to use her account ..................................................................10

    D.    Ms. Srivastava Has Validated The Screenshot ....................................11

    E.    The DAA Existed And Was In Effect When Plaintiff Opened The Account........13

    F.    Plaintiff Failed To Timely Opt-Out Of The Arbitration Agreement ...................15

CONCLUSION....................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anonymous v. JPMorgan Chase & Co.,*
    2005 WL 2861589 (S.D.N.Y. Oct. 31, 2005) ........................................................................10

*Armstead v. Starbucks Corp.,*
    2017 WL 5593519 (S.D.N.Y. Nov. 17, 2017) ...........................................................................7

*Bernardino v. Barnes & Noble Booksellers, Inc.,*
    2017 WL 7309893 (S.D.N.Y. Nov. 20, 2017) ..................................................................12, 13

*Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.,*
    189 F.3d 289 (2d Cir. 1999) .....................................................................................................3

*Chemours Co. v. DowDuPont Inc.,*
    2020 WL 1527783 (Del. Ch. Mar. 30, 2020) ...........................................................................6

*Daly v. Citigroup Inc.,*
    939 F.3d 415 (2d Cir. 2019) .....................................................................................................2

*Doe v. Massage Envy Franchising, LLC,*
    2020 WL 7624622 (Del. Super. Dec. 21, 2020) ......................................................................7

*Eagle Force Holdings, LLC v. Campbell,*
    187 A.3d 1209 (Del. 2018) .......................................................................................................7

*Edelist v. MNBA Am. Bank,*
    790 A.2d 1249 (Del. Super. 2001) .........................................................................................16

*Geraci v. Uber Techs., Inc.,*
    2021 WL 5028368 (Del. Super. Oct. 29, 2021) ......................................................................7

*Giggle, Inc. v. netFocal, Inc.,*
    856 F. Supp. 2d 625 (S.D.N.Y. 2012) ...................................................................................12

*Green Tree Fin. Corp.-Ala. v. Randolph,*
    531 U.S. 79 (2000) ....................................................................................................................2

*Health All. Network Inc. v. Cont'l Cas. Co.,*
    245 F.R.D. 121 (S.D.N.Y. 2007) .............................................................................................5

*Highland HC, LLC v. Scott,*
    113 A.D.3d 590 (N.Y. App. Div. 2014) ..................................................................................7

**Page(s)**

*Ion Audio, LLC v. Bed, Bath & Beyond, Inc.*
   2019 WL 1494398 (S.D.N.Y. Apr. 2, 2019)...................................................................5

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
   387 F.3d 163 (2d Cir. 2004)...................................................................................3

*Johnson v. Thruway Speedways, Inc.*,
   407 N.Y.S.2d 81 (N.Y. App. Div. 1978) ................................................................7

*Kasper Glob. Collection & Brokers, Inc. v. Glob. Cabinets & Furniture Mfrs., Inc.*,
   952 F. Supp. 2d 542 (S.D.N.Y. 2013)...................................................................5

*Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc.*,
   2007 WL 74304 (E.D.N.Y. Jan 8, 2007) ..............................................................6

*Kurz v. Chase Manhattan Bank USA, N.A.*,
   319 F. Supp. 2d 457 (S.D.N.Y. 2004)..................................................................16

*Mancilla v. ABM Indus., Inc.*,
   2020 WL 4432122 (S.D.N.Y. July 29, 2020) ......................................................12

*Marcus v. Collins*,
   2016 WL 8201629 (S.D.N.Y. Dec. 30, 2016) .......................................................6

*McEntee v. Ormes Cap. Mkts., Inc.*,
   1995 WL 716734 (S.D.N.Y. Dec. 6, 1995) .........................................................10

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017)..........................................................................7, 8, 9

*Miss Jones LLC v. Stiles*,
   2020 WL 4704886 (S.D.N.Y. Aug. 13, 2020) ......................................................5

*Oppenheimer & Co. v. Neidhardt*,
   56 F.3d 352 (2d Cir. 1995)........................................................................2, 3

*Ostreicher v. TransUnion, LLC*,
   2020 WL 3414633 (S.D.N.Y. June 22, 2020) .....................................................16

*Peiran Zheng v. Live Auctioneers LLC*,
   2021 WL 2043562 (S.D.N.Y. May 21, 2021) ......................................................10

*Phoenix Assocs. III v. Stone*,
   60 F.3d 95 (2d Cir. 1995)...........................................................................5

*Ragone v. Atl. Video at Manhattan Ctr.*,
   2008 WL 4058480 (S.D.N.Y. Aug. 29, 2008) .....................................................10

**Page(s)**

*Salerno v. Credit One Bank, NA*,
2015 WL 6554977 (W.D.N.Y. Oct. 29, 2019) ................................................11, 16

*Schnabel v. Trilegiant Corp.*,
697 F.3d 110 (2d Cir. 2012)..................................................................................8

*Searles v. First Fortis Life Ins. Co.*,
98 F. Supp. 2d 456 (S.D.N.Y. 2000)..................................................................5, 6

*Shannon v. New York City Transit Auth.*,
189 F. Supp. 2d 55 (S.D.N.Y. 2002), *aff'd* 332 F.3d 95 (2d Cir. 2003) ..................5

*Specht v. Netscape Commc'ns Corp.*,
306 F.3d 17 (2d Cir. 2002).....................................................................................3

*Starke v. SquareTrade, Inc.*,
913 F.3d 279 (2d Cir. 2019)....................................................................................7

*Stern v. Espeed, Inc.*,
2006 WL 2741635 (S.D.N.Y. Sept. 22, 2006)........................................................7

*United States v. Avenatti*,
2021 WL 4120539 (S.D.N.Y. Sept. 9, 2021).........................................................12

*United States v. Gammal*,
831 F. App'x 539 (2d Cir. 2020) ............................................................................4

*United States v. Komasa*,
767 F.3d 151 (2d Cir. 2014)....................................................................................5

*Weiss v. Am. Express Nat'l Bank*,
2020 WL 6807628 (S.D.N.Y. Nov. 18, 2020) ......................................................11

*Worthington v. JetSmarter, Inc.*,
2019 WL 4933635 (S.D.N.Y. Oct. 7, 2019) ..............................................11, 12, 13

**Statutes**

Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* ..........................................................1, 3

**Other Authorities**

Federal Rules of Evidence Rule 803(6) ......................................................................4, 5

4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* (1994) .....................5

Defendants, Chime Financial, Inc. ("Chime") and The Bancorp Bank ("Bancorp" and, together with Chime, "Defendants"), respectfully submit this reply memorandum of law, together with the Reply Declaration of Isha Srivastava, dated November 22, 2021 (the "Srivastava Reply Dec."), and the exhibits annexed thereto, in support of Defendants' motion (the "Motion") for an Order: (1) pursuant to Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* (the "FAA"), compelling plaintiff, Delia Flores ("Plaintiff"), to arbitrate the claims asserted against Defendants in the above-captioned action ("Action"); and (2) staying the Action until such arbitration is complete.[1]

## PRELIMINARY STATEMENT

The undisputed facts in the record demonstrate that Plaintiff and Defendants have entered into a valid agreement to arbitrate disputes arising from Plaintiff's use of her Chime account, including the claims asserted by Plaintiff in this action. While Plaintiff contends that Defendants are unable to prove Plaintiff agreed to terms requiring arbitration, Plaintiff does not dispute that the applicable Deposit Account Agreement ("DAA") and the Chime Member Agreement ("Member Agreement") each contain an express written arbitration agreement to which she agreed, nor does Plaintiff attempt to argue that her claims are outside the scope of the DAA and Member Agreement. Instead, Plaintiff merely denies having a recollection, despite overwhelming evidence to the contrary, that she willingly entered into the arbitration agreements.

Plaintiff ignores unfavorable facts, cherry-picks unsupported allegations, and makes factual arguments that are either unsupported or belied by the record. Aside from Plaintiff's self-serving claims of a faulty memory, as well as her machinations regarding Defendants' alleged failure to authenticate documents that conclusively establish that this claim is subject to arbitration,

---

[1] Unless otherwise stated herein, all defined terms referred herein shall have the same meaning ascribed to them as set forth in the Moving Brief in Support of Defendants' Motion to Compel Arbitration and to Stay the Proceedings, dated July 23, 2021 (the "Moving Brief").

Plaintiff has failed to rebut the evidence proffered by Defendants in support of their Motion, namely, that Plaintiff entered into an agreement to arbitrate with Defendants when she opened her Chime account online and failed to timely opt-out of any such arbitration agreements.

Accordingly, Defendants respectfully request that this Court grant their motion to compel arbitration and to stay this Action, in its entirety.

## **ARGUMENT**

It is settled law that "[t]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). A party opposing arbitration cannot satisfy this burden through "general denials of the facts on which the right to arbitration depends" or, put another way, "[i]f the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of facts to be tried." *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995).

"In accordance with the 'strong federal policy favoring arbitration,'" courts should "resolve any doubts concerning the scope of arbitrable issues 'in favor of arbitrability.'" *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (quoting *State of N.Y. v. Oneida Indian Nation of N.Y.*, 90 F.3d 58, 61 (2d Cir. 1996)). In doing so, courts "will compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* (quoting *Oneida Indian Nation*, 90 F.3d at 61).

Accordingly, Plaintiff bears the burden of establishing that the arbitration provisions contained in both the DAA and the Member Agreement do not apply to the claims that she asserts in the Complaint. Plaintiff has failed to sustain that burden. Indeed, Plaintiff does not deny that the arbitration provisions cover the claims that she asserts in this Action, she instead claims that

she does not recall agreeing to be bound by *any agreements* when she opened her Chime Account. Plaintiff's contention that her account relationship with Chime is not governed by any contract not only strains credulity and is belied by the documentary evidence, but it is also insufficient to overcome Defendants' Motion. *See Neidhardt*, 56 F.3d at 358.   Moreover, Plaintiff has failed to provide any evidence or explanation as to how she bypassed signing two mandatory agreements, both containing valid arbitration provisions, when she opened her account with Chime in February of 2020.   Therefore, Plaintiff has failed to establish the burden of proving that her claims are unsuitable for arbitration. *See JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004) (quoting *Moses H. Cone. Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("[U]nder the FAA, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'")).

## I. THE PARTIES ENTERED INTO VALID AND ENFORCEABLE ARBITRATION AGREEMENTS

**A.    Delaware Law Should Be Applied To Determine Whether The Parties Have Agreed To Arbitration**

Whether parties have agreed to arbitrate a claim is a question of state contract law. *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 26 (2d Cir. 2002); *Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.*, 189 F.3d 289, 295-96 (2d Cir. 1999) ("[W]hile . . . the FAA preempts state law that treats arbitration agreements differently from any other contracts, it also preserves general principles of state contract law as rules of decision on whether the parties have entered

into an agreement to arbitrate."). Here, the DAA is unequivocally governed by Delaware law.[2] *See Srivastava Reply Dec.*, Exhibit "A," pp. 3-4, ¶ C.

Nevertheless, Plaintiff argues, incorrectly, that Delaware law does not govern this dispute on the grounds that Defendants have not met their burden to establish that the parties entered into the DAA, which includes an arbitration provision.  However, Plaintiff does not dispute that, by its plain terms, the DAA provides that Delaware law governs. Rather, Plaintiff merely asserts, again incorrectly, that the agreement does not exist.  *See Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Compel Arbitration ("Opp. Mem.")* at p. 5.  For the reasons set forth herein, Defendants have established that Plaintiff was required to agree, and did agree, to be bound by the DAA (and the Member Agreement) when she opened the Account, and as a result, Delaware law applies.

## B.    Ms. Srivastava Is A Qualified Witness

Contrary to Plaintiff's assertions, the exhibits to the initial Declaration of Isha Srivastava, dated July 21, 2021 (the "Initial Srivastava Dec."), including Chime's user records, Plaintiff's application, the DAA, and the Member Agreement, are admissible under the business records exception of Federal Rules of Evidence Rule 803(6).

Plaintiff claims that Ms. Srivastava is not a qualified witness, and therefore is unable to authenticate the documents annexed to her Initial Declaration. However, in that same breath, Plaintiff acknowledges, as she must, that "[c]ourts typically give the term 'qualified witness' a 'very broad interpretation.'"  *Opp. Mem.* at p. 7 (quoting *United States v. Gammal*, 831 F. App'x 539, 543 (2d Cir. 2020)).  In fact "[a] person who testifies to the admissibility of business records

---

[2] Although the Chime Member Agreement is governed by California law (*see Srivastava Reply Dec.*, Exhibit "B," ¶ 23), California and Delaware contract law are substantially similar regarding the enforcement of arbitration agreements, and application of either state law would result in a finding that both arbitration provisions are binding and enforceable. *See Motion*, p. 8, n.9.

'need only show that he [or she] is "familiar with the record-keeping system of the business in question and [knows] how the records were created."'" *Miss Jones LLC v. Stiles*, 2020 WL 4704886, at *2 (S.D.N.Y. Aug. 13, 2020) (alterations in original) (quoting *Kasper Glob. Collection & Brokers, Inc. v. Glob. Cabinets & Furniture Mfrs., Inc.*, 952 F. Supp. 2d 542, 572-73 (S.D.N.Y. 2013)).

A qualified witness or custodian "need not have personal knowledge of the actual creation of the document to lay a proper foundation," *Health All. Network Inc. v. Cont'l Cas. Co.*, 245 F.R.D. 121, 130 (S.D.N.Y. 2007), "[n]or is there any requirement under Rule 803(6) that the records be prepared by the party who has custody of the documents and seeks to introduce them into evidence." *Phoenix Assocs. III v. Stone*, 60 F.3d 95, 101 (2d Cir. 1995) (quoting 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence*, ¶ 803-201-04 (1994)). Rather, all that is required is that a qualified witness testify "that the document was 'kept in the course of regularly conducted business activity and also that it was the regular practice of that business activity to make the [record].'" *Ion Audio, LLC v. Bed, Bath & Beyond, Inc.*, 2019 WL 1494398, at *5 (S.D.N.Y. Apr. 2, 2019) (quoting *United States v. Komasa*, 767 F.3d 151, 156 (2d Cir. 2014)). Further, "an affiant may testify as to the contents of records she reviewed in her official capacity." *Searles v. First Fortis Life Ins. Co.*, 98 F. Supp. 2d 456, 461 (S.D.N.Y. 2000); *accord Shannon v. New York City Transit Auth.*, 189 F. Supp. 2d 55, 66 (S.D.N.Y. 2002), *aff'd*, 332 F.3d 95 (2d Cir. 2003). Ms. Srivastava is clearly a qualified witness.

In her Initial Declaration, Ms. Srivastava stated that she is "a Litigation Specialist[3] within the Legal Department of [Chime]" and that she has reviewed of records that were "created and maintained by Chime in the ordinary course of business." *Initial Srivastava Dec.*, at ¶ 1. Ms.

---

[3] As of October 2021, Ms. Srivastava is now an Associate Litigation Counsel within the Chime Legal Department.

Srivastava further stated in her Reply Declaration that (i) she "regularly access[es] Chime account-related documents," such as the exhibits annexed thereto, and (ii) she is "fully familiar with Chime's practices of maintaining such documents in the ordinary course of its business." *Srivastava Reply Dec.*, ¶ 2. Ms. Srivastava has therefore established that she is qualified to lay the foundation for the admissibility of the business records attached to her Initial Declaration and to her Reply Declaration. *See Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc.*, 2007 WL 74304, at *2 (E.D.N.Y. Jan. 8, 2007) (finding officer of company could offer evidence in declaration based on personal knowledge from review of company records); *Searles*, 98 F. Supp. 2d at 461-62 (finding sufficient personal knowledge where the affiant was a corporate officer of the defendant, which qualified her to review the relevant business materials and make sworn statements based upon those materials).[4]

## C.   An Agreement To Arbitrate Exists Between The Parties

Under Delaware law, "the formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange . . . ." *Chemours Co. v. DowDuPont Inc.*, 2020 WL 1527783, at *9 (Del. Ch. Mar. 30, 2020) (quoting *Eagle Force Holdings, LLC v. Campbell*, 187 A.3d 1209, 1212 (Del. 2018)). "[O]vert manifestation of assent—not subjective intent—controls the formation of a contract." *Id.* (quoting *Eagle Force*, 187 A.3d at 1229). "Where the putative

---

[4] Plaintiff's reliance on this Court's decision in *Marcus v. Collins*, 2016 WL 8201629 (S.D.N.Y. Dec. 30, 2016), is wholly misplaced. In that case, in which the Court denied a motion to compel arbitration, it was deemed critical that the employer-defendant establish the plaintiff's membership in a union, because all union members were bound by a collective bargaining agreement that required arbitration of all discrimination claims arising from their employment. *Id.* at *8. In support of its motion to compel arbitration, the defendant failed to submit sworn statements or other admissible evidence from union officials with knowledge of the organization's membership procedures or the plaintiff's union status. *Id.* The Court, in denying the motion to compel arbitration, focused on the fact that the defendant relied on a "complex chain of proof" involving information regarding another organization's policies and procedures that was "held together, at many crucial links, only by assumptions and inferences." *Id.* That is hardly the case here. Unlike in *Marcus,* there was no third party involved in the signing and execution of the arbitration agreement that governs this action, nor was there a "complex chain of proof" necessary for Defendants to establish that Plaintiff entered into an arbitration agreement that governs this Action, since Plaintiff agreed to be bound by the agreement that was prepared by Chime itself.

contract is in the form of a signed writing, that document generally offers the most powerful and persuasive evidence of the parties' intent to be bound." *Eagle Force*, 187 A.3d at 1230.[5]  Plaintiff claims that no valid agreement to arbitrate exists, because Defendants have failed to establish that there was a manifestation of mutual assent between the parties. *Opp. Mem.* at p. 9.  For the reasons set forth below, Plaintiff is incorrect.

>    i.    **Plaintiff had reasonable notice of the arbitration provision**

As Defendants established in the Moving Brief, courts routinely uphold "clickwrap" (or "click-through") agreements because users must affirmatively assent to the terms of the agreement by clicking "I agree" after being presented with the terms and conditions of use.  *See Defendants' Motion To Compel Arbitration* at pp. 9-10;  *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) (applying California law but noting that New York and California apply substantially the same rules for determining whether there has been mutual assent necessary to form a contract). Further, a party is bound by a web-based contract if the party is placed on inquiry notice, "meaning that 'the notice of the arbitration provision was reasonably conspicuous and manifestation of assent [is] unambiguous as a matter of law.'" *Armstead v. Starbucks Corp.*, 2017 WL 5593519, at *3 (S.D.N.Y. Nov. 17, 2017) (quoting *Meyer*, 868 F.3d at 76).

To be bound by an arbitration agreement contained within a clickwrap agreement, the user must have "reasonable notice of the arbitration provision." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 292 (2d Cir. 2019); *see Doe v. Massage Envy Franchising, LLC*, 2020 WL 7624622, at *3 (Del. Super. Dec. 21, 2020) (holding that an arbitration provision contained within a clickwrap

---

[5] New York case law pertaining to mutual assent to the formation of a contract mirrors that of Delaware. "[T]o create a binding contract, there must be a meeting of the minds." *Highland HC, LLC v. Scott*, 113 A.D.3d 590, 594 (N.Y. App. Div. 2014). However, it is settled under New York law that "a party will not be excused from his failure to read and understand the contents" of a document. *Johnson v. Thruway Speedways, Inc.*, 407 N.Y.S.2d 81, 83 (N.Y. App. Div. 1978). The general rule under New York law is that "a party who executes a contract is considered bound by the terms of that contract." *Stern v. Espeed, Inc.*, 2006 WL 2741635, at *2 (S.D.N.Y. Sept. 22, 2006).

agreement was enforceable because the hyperlink to the agreement was underlined and the arbitration provision itself was "conspicuous, in bold, capitalized text"); *Geraci v. Uber Techs., Inc.*, 2021 WL 5028368, at *2 (Del. Super. Oct. 29, 2021) ("Plaintiff clicked "YES, I AGREE" to the terms of the agreement to create an account and continue to use such account. . . .  therefore Plaintiff entered into a valid and enforceable arbitration agreement.").

Reasonable notice, or inquiry notice, is "actual notice of circumstances sufficient to put a prudent man upon inquiry." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 120 (2d Cir. 2012); *see Meyer*, 868 F.3d at 74-75 ("Where there is no evidence that the offeree had actual notice of the terms of the agreement, the offeree will still be bound by the agreement is a reasonably prudent user would be on inquiry notice of the terms."). "Whether a reasonably prudent user would be on inquiry notice turns on the '[c]larity and conspicuousness of arbitration terms." *Meyer*, 868 F.3d at 75 (alteration in original) (quoting *Specht*, 306 F.3d at 26). In the context of internet-based contracts, "clarity and conspicuousness are a function of the design and content of the relevant interface." *Id.*

In *Meyer,* the court enforced an arbitration provision contained in the "terms of service & privacy policy" that was accessible from the registration screen of the Uber smartphone application. 868 F.3d at 81. The court noted that "a reasonably prudent smartphone user knows that the text that is highlighted in blue and underlined is hyperlinked to another webpage where additional information will be found." *Id.* at 77-78. The court further found that the Uber smartphone interface provided reasonable notice based on a number of facts, including that the screen was "uncluttered"; the dark text contrasted the bright, white background; the text, which included the hyperlinks to the terms and conditions and privacy policy, appeared directly below the registration button; the "notice of the Terms of Service [was] provided simultaneously to

enrollment"; and once the user had clicked into the Terms of Service, "the section heading ('Dispute Resolution') and the sentence waiving the user's right to a jury trial on relevant claims [were] both bolded." *Id.* at 78-79.

Here, there can be no serious dispute that Plaintiff agreed to enter into the Member Agreement and the DAA, or, at the very least, was on reasonable notice of the arbitration provision. The entire last webpage in the Chime account-sign-up process is exclusively devoted to requiring users to acknowledge that they have read and agreed to both the Member Agreement and the DAA. *See Initial Srivastava Dec*., Exhibit "B." Plaintiff, as are all users, was required to click twice that she read and agreed to each of the agreements to open an account. The font is large and is the focus of the screen, and the hyperlinks to the agreements and privacy policies are bolded and appear in green. *Id.* The text is easily readable against the bright, white background and the screen is not cluttered, so a user's focus would immediately go to the links to the agreements, nor does Plaintiff contend otherwise. *Id.*

Finally, the following text in the DAA regarding arbitration is bolded and in all caps: "**ARBITRATION OF YOUR CLAIM IS MANDATORY AND BINDING**," and "**IF YOU DO NOT AGREE TO THE TERMS OF THIS ARBITRATION AGREEMENT, DO NOT ACTIVATE OR USE THE CARD OR SPENDING ACCOUNT**." *Srivastava Reply Dec.*, Exhibit "A," ¶ 16. Similarly, the first page of the Member Agreement, on its first page sets forth in all caps and bold: "**THIS MEMBER AGREEMENT ALSO INCLUDES, AMONG OTHER THINGS, A BINDING ARBITRATION PROVISION THAT CONTAINS A CLASS ACTION WAIVER. PLEASE REFER TO SECTION 22 BELOW FOR MORE INFORMATION**." *Srivastava Reply Dec.*, Exhibit "B," p. 1. Finally, the arbitration provision set forth in the Member Agreement provides, in all caps, in its very first sentence: "PLEASE

9

READ THE FOLLOWING SECTION CAREFULLY BECAUSE IT REQUIRES YOU TO ARBITRATE CERTAIN DISPUTES AND CLAIMS WITH US AND LIMITS THE MANNER IN WHICH YOU CAN SEEK RELIEF FROM US." *Id.* at p. 8.

A reasonably prudent user would have been notified of the foregoing terms and conditions, and the Court must therefore hold that Plaintiff assented to such terms and conditions when she opened the Account.  *See Peiran Zheng v. Live Auctioneers LLC*, 2021 WL 2043562, at *4-5 (S.D.N.Y. May 21, 2021) (finding that the plaintiff had reasonable notice of the arbitration provision in the hyperlinked terms and conditions and that parties entered into a valid agreement when the plaintiff clicked "AGREE' and continued to use defendant's website).

In support of her contention that she did not agree to be bound by the Member Agreement or the DAA, Plaintiff simply states that she does not "precisely recall which screens were displayed during the Chime accounts sign-up process." *See Declaration of Delia Flores,* at ¶ 13.  However, standing alone, Plaintiff's faulty memory cannot withstand Defendants' well-supported Motion to compel arbitration.  *See Ragone v. Atl. Video at Manhattan Ctr.*, 2008 WL 4058480, at *4 (S.D.N.Y. Aug. 29, 2008) (finding that the plaintiff agreed to arbitrate, despite her claim that she did not remember reviewing or signing the agreement, because it was clearly established that the plaintiff executed the arbitration agreement); *McEntee v. Ormes Cap. Mkts., Inc*., 1995 WL 716734, at *3 (S.D.N.Y. Dec. 6, 1995) (finding that the plaintiff was bound by arbitration agreement regardless whether the plaintiff remembered signing it).

### ii.     Plaintiff evinced her assent to the arbitration provision by continuing to use her account

Even assuming the impossible, *arguendo*, that Plaintiff somehow bypassed clicking-through the required steps of agreeing to be bound by the Member Agreement and the DAA when she opened the Account, and thereby was able to open the Account without it being governed by

any contract or agreement, Plaintiff clearly evinced her assent to the agreements by continuing to use her account and debit card for ten months after signing the agreement.  *See Anonymous v. JPMorgan Chase & Co.*, 2005 WL 2861589, at *4 (S.D.N.Y. Oct. 31, 2005) (finding "plaintiff agreed to the terms of the Arbitration Agreement" when there was "uncontested evidence . . . plaintiff used the Chase card and made payments to Chase . . . for several months"). "[R]egular use of a credit card constitutes sufficient evidence of the card user's consent to the terms of the agreement governing the account." *Weiss v. Am. Express Nat'l Bank*, 2020 WL 6807628, at *2 (S.D.N.Y. Nov. 18, 2020); *see Salerno v. Credit One Bank, NA*, 2015 WL 6554977, at *4 (W.D.N.Y. Oct. 29, 2019) ("Given the unrebutted evidence that [plaintiff] received the Cardholder Agreement, that [plaintiff] used the AMEX credit card sent with the Cardholder Agreement, and that the Cardholder Agreement had an arbitration provision in it at all times, the Court finds a valid agreement to arbitrate.").

Plaintiff continued using her debit card and account for ten months after she received the account agreements with their respective arbitration agreements before the Account was closed. Defendants have demonstrated that Plaintiff was provided with these account agreements when she opened her account online. Plaintiff's notice of the account agreements, containing the valid arbitration provisions, and subsequent continued use of her account clearly demonstrates that Plaintiff consented to the terms of the agreement governing the account and remain bound by the DAA.  *See id.*

### D.    Ms. Srivastava Has Validated The Screenshot.

Plaintiff incorrectly argues that the "screenshot" from Chase's mobile app, annexed as Exhibit "B" to the Initial Srivastava Dec. (reflecting the last steps of the sign-up process) does not contain "indicia of authenticity," such as a URL address.  As an initial matter, it appears that

Plaintiff did not even review the screenshot, which clearly displays a URL address ("www.chime.com") in the browser line.

Moreover, "[w]hen presented with arbitration agreements in contracts formed online between companies and their customers, courts routinely rely on affidavits and declarations (similar to the [company employee] [d]eclaration) and screenshots . . . submitted by the company's employee describing and depicting how the customer manifested assent to the company's arbitration provision." *Worthington v. JetSmarter, Inc.*, 2019 WL 4933635, at \*5 (S.D.N.Y. Oct. 7, 2019); *Mancilla v. ABM Indus., Inc.*, 2020 WL 4432122, at \*6 (S.D.N.Y. July 29, 2020); *see also United States v. Avenatti,* 2021 WL 4120539, at \*4 (S.D.N.Y. 2021) ("[I]t is well established that, if properly authenticated (for example, by a witness with knowledge, such as a participant), screenshots of text messages and copies of electronic communications are admissible."). "In *Selden v. Airbnb, Inc.*[,] 2016 WL 6476934, at \*2-5 (D.D.C. Nov. 1, 2016), for example, in granting a motion to compel arbitration, the court relied on a declaration from an Airbnb employee that explained the sign-up process and attached a rendering of the sign-up page as it would have appeared to the plaintiff at the time he signed up." *Worthington*, 2019 WL 4933635, at \*5.

As a further example, in *Bernardino v. Barnes & Noble Booksellers, Inc.*, this Court properly relied on a declaration of a Barnes & Noble employee that attached screenshots of images of the Barnes & Noble website obtained from the company's internal quality assurance server to determine that the parties entered in an agreement to arbitration.  2017 WL 7309893, at \*6-8 (S.D.N.Y. Nov. 20, 2017) (accepting a screenshot submitted by the defendant despite plaintiff's contentions that the defendant's evidence regarding the existence of an agreement to arbitrate was not "perfect," because "perfect is not the standard"); *see also Giggle, Inc. v. netFocal, Inc.*, 856 F.

Supp. 2d 625, 632-33 (S.D.N.Y. 2012) (finding over 40 screenshots of advertisements and websites were properly authenticated by affidavit from Defendant's counsel).

As mentioned above, Ms. Srivastava is an Associate Litigation Counsel within Chime's Legal Department. As an employee of Chime, Ms. Srivastava has attested that the screenshot is "an accurate representation of a final online screen" that a user, such as Plaintiff, would have been required to read and acknowledge that she read and agreed to the attached account agreements, each of which contained a conspicuous arbitration agreement. Accordingly, Ms. Srivastava has sufficiently authenticated the screenshot. *See Worthington*, 2019 WL 4933635, at *5; *see also Bernardino,* 2017 WL 7309893, at *6-8.

**E.     The DAA Existed And Was In Effect When Plaintiff Opened The Account**

Plaintiff further argues that the DAA that was annexed as Exhibit "C" to the Initial Srivastava Dec. is inapplicable on the grounds that her Account was closed in or about December 2020, and that the annexed version of the DAA indicated that it had been revised in April 2021.[6] *See Opp. Mem.,* p. 13.  Plaintiff's argument amounts to nothing more than form over substance, since she fails to establish that the April 2021 version of the DAA contained a different arbitration provision than the version that was in effect when she opened the Account in February 2020. Regardless, Plaintiff is bound by the DAA that is attached to the Reply Srivastava Dec. as Exhibit "A," which, in relevant part, provides:

> Any claim, dispute, or controversy ("Claim") arising out of or relating in any way to: i) this Agreement; ii) the Spending Account; iii) your acquisition of the Spending Account; iv) your use of the Spending Account; v) the amount of available funds in the Spending Account; vi) advertisements, promotions or oral or written statements related to the Spending Account, as well as goods or services purchased with the Spending Account; vii) the benefits and services related to the Spending Account; or viii) transactions made

---

[6] Plaintiff contradicts herself by also claiming that she "accepted" this revised version in August 2021, eight months after her Account had been closed.  *Declaration of Delia Flores*, ¶¶ 7-9.

using the Spending Account, no matter how described, pleaded or styled, shall be FINALLY and EXCLUSIVELY resolved by binding individual arbitration conducted by the American Arbitration Association ("AAA") under its Consumer Arbitration Rules. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act (9 U.S.C. 1-16).

We will pay the initial filing fee to commence arbitration and any arbitration hearing that you attend shall take place in the federal judicial district of your residence.

**ARBITRATION OF YOUR CLAIM IS MANDATORY AND BINDING. NEITHER PARTY WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM THROUGH A COURT. IN ARBITRATION, NEITHER PARTY WILL HAVE THE RIGHT TO A JURY TRIAL OR TO ENGAGE IN DISCOVERY, EXCEPT AS PROVIDED FOR IN THE AAA CODE OF PROCEDURE.**

For a copy of the procedures, to file a Claim or for other information about this organization, contact it at: AAA, 335 Madison Avenue, New York, NY 10017, or at www.adr.org.

All determinations as to the scope, interpretation, enforceability and validity of this Agreement shall be made final exclusively by the arbitrator, which award shall be binding and final. Judgment on the arbitration award may be entered in any court having jurisdiction.

**NO CLASS ACTION, OR OTHER REPRESENTATIVE ACTION OR PRIVATE ATTORNEY GENERAL ACTION OR JOINDER OR CONSOLIDATION OF ANY CLAIM WITH A CLAIM OF ANOTHER PERSON OR CLASS OF CLAIMANTS SHALL BE ALLOWABLE.**

[T]his arbitration provision shall survive: i) the termination of the Agreement; ii) the bankruptcy of any party; iii) any transfer, sale or assignment of your Spending Account, or any amounts owed on your Spending Account, to any other person or entity; or iv) closing of the Spending Account. If any portion of this arbitration provision is deemed invalid or unenforceable, the remaining portions shall remain in force.

**IF YOU DO NOT AGREE TO THE TERMS OF THIS ARBITRATION AGREEMENT, DO NOT ACTIVATE OR USE THE CARD OR SPENDING ACCOUNT. CALL 1-844-**

**244-6363 TO CLOSE THE SPENDING ACCOUNT AND REQUEST A REFUND, IF APPLICABLE.**

Further, the first paragraph set forth in the DAA provides that the agreement is "revised periodically." *Srivastava Reply Dec.*, Exhibit "A," ¶ I. The March 2019 DAA remained in effect until a revised version was made available in April 2021. *Srivastava Reply Dec.,* Exhibit "A"; *Initial Srivastava Dec.*, Exhibit "C."   Regardless, the material terms of the DAA relating to arbitration remain unchanged.

The March 2019 DAA, which Plaintiff signed and agreed to during her application process, governed Plaintiff's Account upon opening through the closing of the Account. The March 2019 DAA also includes the same arbitration provisions as set forth in the April 2021 version of the DAA, and further includes a survivability provision, which expressly provides that the arbitration provision will survive, among other things, the closing of the Account. *Srivastava Reply Dec.*, Exhibit "A," ¶ 16. Thus, in accordance with the March 2019 DAA signed by Plaintiff, Plaintiff must arbitrate her claims.

**F.      Plaintiff Failed To Timely Opt-Out Of The Arbitration Agreement**

Despite having closed the account in or about December 2020, Plaintiff nevertheless argues that she opted out of the arbitration agreement that was in the Member Agreement, which she claims to have seen for the first time in August 2021. *Declaration of Delia Flores*, ¶¶ 7-9. However, Plaintiff's attempt to opt-out of the arbitration agreement in August 2021 was untimely and ineffective.

As set forth herein, upon opening the Account, Plaintiff agreed to be bound by the March 2019 DAA, which provides: "IF YOU DO NOT AGREE TO THE TERMS OF THIS ARBITRATION AGREEMENT, DO NOT ACTIVATE OR USE THE CARD OR SPENDING ACCOUNT. CALL 1-844-244-6363 TO CLOSE THE SPENDING ACCOUNT AND REQUEST

A REFUND, IF APPLICABLE." *Srivastava Reply Dec.*, Exhibit "A," ¶ 16. Moreover, the Member Agreement which Plaintiff entered into upon opening her account provides that users can opt out of the arbitration provision via email within the first thirty days of accepting the agreement. *Srivastava Reply Dec.*, Exhibit "B," ¶ 23, section (d). Significantly, Plaintiff does not contend that she attempted to opt-out of or otherwise reject the arbitration agreement set forth in either the March 2019 DAA or the June 2019 Member Agreement.

Further, as stated in the Complaint, Plaintiff continued to maintain her Account until December 2020. Dkt. No. 1, at pp. 2-3; *Declaration of Delia Flores,* ¶ 5. Plaintiff's maintenance and use of her Account demonstrates that she did not validly opt out of the arbitration agreement and is therefore bound to the terms of the DAA. *Kurz v. Chase Manhattan Bank USA, N.A.*, 319 F. Supp. 2d 457, 465 (S.D.N.Y. 2004) (citing *Edelist v. MNBA Am. Bank*, 790 A.2d 1249, 1257-58 (Del. Super. 2001) ("Failure to comply with the terms of the opt-out provision and continued charges to the account operate as acceptance of the arbitration amendment under Delaware law."); *e.g., Ostreicher v. TransUnion,* LLC, 2020 WL 3414633, at *6 (S.D.N.Y. June 22, 2020); *Salerno*, 2015 WL 6554977, at *4 (finding a valid arbitration agreement existed where plaintiff was sent the Cardholder Agreement with the credit card and plaintiff continued to use the credit card).

## <u>CONCLUSION</u>

For the foregoing reasons, defendants, Chime Financial Inc. and The Bancorp Bank, respectfully request that this Court issue an Order: (i) compelling arbitration of Plaintiff's claims in accordance with the express terms of the valid and enforceable arbitration agreements;

(ii) staying this action pending completion of arbitration proceedings; and (iii) granting such other and further relief as this Court deems just, proper and/or equitable.

Dated: November 22, 2021                    SILLS CUMMIS & GROSS P.C.


By:     /s/ Tyler J. Kandel
                    Tyler J. Kandel
                    Erin E. Barrett
                    101 Park Avenue
                    28th Floor
                    New York, New York  10178
                    (212) 643-7000
                    *Attorneys for Defendants*
                    *Chime Financial, Inc. and*
                    *The Bancorp Bank*