USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 03/23/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DELIA FLORES,

              Plaintiff,

v.

CHIME FINANCIAL, INC. f/k/a 1DEBIT, INC., and THE BANCORP BANK,

              Defendants.

No. 21-CV-4735 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Plaintiff Delia Flores brings this action against Chime Financial, Inc., formerly known as 1Debit, Inc, and The Bancorp Bank (collectively, the "Defendants"), alleging violations of the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.* ("EFTA"), and the New York General Business Law ("NYGBL").

Defendants move to compel arbitration and to stay these proceedings. For the reasons set forth below, Defendants' motion is granted, and this action is stayed pending resolution of the arbitration.

## BACKGROUND[1]

From February through December of 2020, Plaintiff Delia Flores maintained an online spending account through Chime Financial, Inc ("Chime"), with banking services provided by The Bancorp Bank ("Bancorp"). Ms. Flores alleges that in December of 2020, she discovered that her nephew was making a series of unauthorized charges to her Chime bank account. She asserts that she disputed the unauthorized charges, but Chime failed to credit the money back to her account. Compl. ¶¶ 2, 13–17, 25–26. On May 26, 2021, Ms. Flores filed this action, claiming that the

---

[1] The Court draws the following facts from the Complaint and the supporting declarations and exhibits attached to the parties' briefs.

Defendants violated both the EFTA and the NYGBL.  On July 23, 2021, Defendants moved to compel arbitration, claiming that when Ms. Flores created her Chime account, she agreed to be bound by a mandatory arbitration agreement.

Chime's Associate Litigation Counsel, Isha Srivastava, has submitted an affidavit attesting that "[b]efore gaining access to Chime's Services (as defined in the Chime Member Agreement, 'Member Agreement'), a user must open a Chime Spending Account (as defined by the Deposit Account Agreement ('DAA')) through a mobile-phone application or website application." Srivastava Reply Decl. ¶ 4.  "To open a Chime Spending Account, a user is required to complete an online application during which the user agrees to be bound by the terms and conditions of the DAA and the Member Agreement."  *Id.*  Defendants produced a screenshot depicting "the final online screen that a user such as the plaintiff in this case would have been required to click-through, acknowledging that she had read and agreed to the Member Agreement and the DAA."  *Id.* ¶ 10; *see also* Srivastava Decl. Ex. B.  The screenshot contains the URL "chime.com" at the top and shows two check boxes, prompting the user to click each if they had read and agreed to Chime's user and account agreements.  *Id.*  Each agreement is highlighted in green and appears as a hyperlink that a user could click to be brought to a new webpage.  *Id.*  The check boxes and hyperlinks appear above a button enabling the user to "Submit application."  *Id.*

Additionally, "Chime keeps records regarding when a user electronically completes the registration process, which includes the timestamp of a user's acceptance of the DAA and Member Agreement."  *Id.* ¶ 5.  If a user does not accept the Member Agreement or the DAA, "the user's application remains incomplete and the user is unable to successfully create a Chime account."  *Id.* ¶ 9.

Chime's records show that Ms. Flores used Chime's website, www.chime.com, to open a

Bancorp-issued spending account on February 12, 2020 at 8:15:53 PST. Srivastava Decl. Ex. A. As Ms. Srivastava explains, "Plaintiff could not open any accounts with Chime without having first manually checked the boxes that appear on the Screenshot (regardless of whether she accessed Chime's platform through the website application or mobile application), agreeing to the terms and conditions set forth in the Member Agreement and the DAA." *Id.* ¶ 10. Ms. Flores used her Chime account until it was closed in December of 2020. Flores Decl. ¶ 5.

In support of their motion, Defendants initially attached a 2021 Deposit Account Agreement ("DAA") and a 2021 User Agreement that each contain mandatory arbitration provisions. Srivastava Decl. Exs. C & D. On October 21, 2021, Ms. Flores filed an opposition to Defendants' motion to compel arbitration, accompanied by a personal declaration. Ms. Flores argues that the 2021 DAA and the 2021 User Agreement were last updated in April 2021, and therefore did not exist at the time she enrolled in February 2020 or when she closed her account in December 2020. Pls.' Opp. Br. at 13. In her declaration, Ms. Flores further states that she "do[es] not recall precisely which screens were displayed during the Chime accounts sign-up process, how long each screen appeared during the sign-up process, or whether any links displayed on the screens were clickable or connected to available website pages when clicked," "nor do[es] she] recall ever seeing the Screenshot before or any similar screen image when signing up." Flores Decl. ¶¶ 13, 17. She also asserts that, on August 12, 2021, after receiving the 2021 agreements in connection with this lawsuit, she sent an email to Chime opting-out of the arbitration agreement. *Id.* ¶¶ 7–9; Flores Decl. Ex. 2.

On November 22, 2021, Defendants filed their reply brief, this time attaching as exhibits the correct agreements that were in effect at the time of Plaintiff's enrollment: the March 2019 DAA and the June 2019 Member Agreement. Srivastava Reply Decl. Exs. A & B. Both of these

3

agreements were in effect as of February 12, 2020, the date that Plaintiff created her Chime account. Srivastava Reply Decl. ¶¶ 7–8. Plaintiff has not submitted any evidence calling the authenticity or applicability of these agreements into question.

>The March 2019 DAA contains the following language:
>
>Any claim, dispute, or controversy ("Claim") arising out of or relating in any way to: i) this Agreement; ii) the Spending Account; iii) your acquisition of the Spending Account; iv) your use of the Spending Account; v) the amount of available funds in the Spending Account; vi) advertisements, promotions or oral or written statements related to the Spending Account, as well as goods or services purchased with the Spending Account; vii) the benefits and services related to the Spending Account; or viii) transactions made using the Spending Account, no matter how described, pleaded or styled, shall be FINALLY and EXCLUSIVELY resolved by binding individual arbitration conducted by the American Arbitration Association ("AAA") under its Consumer Arbitration Rules. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act (9 U.S.C. 1-16)
>. . .
>**ARBITRATION OF YOUR CLAIM IS MANDATORY AND BINDING. NEITHER PARTY WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM THROUGH A COURT. IN ARBITRATION, NEITHER PARTY WILL HAVE THE RIGHT TO A JURY TRIAL OR TO ENGAGE IN DISCOVERY, EXCEPT AS PROVIDED FOR IN THE AAA CODE OF PROCEDURE.**
>. . .
>**IF YOU DO NOT AGREE TO THE TERMS OF THIS ARBITRATION AGREEMENT, DO NOT ACTIVATE OR USE THE CARD OR SPENDING ACCOUNT. CALL 1-844-244-6363 TO CLOSE THE SPENDING ACCOUNT AND REQUEST A REFUND, IF APPLICABLE.**

Srivastava Reply Decl. Ex. A, § II.16 (emphasis in original).

The June 2019 Member Agreement contains the following language:

>**THIS MEMBER AGREEMENT ALSO INCLUDES, AMONG OTHER THINGS, A BINDING ARBITRATION PROVISION THAT CONTAINS A CLASS ACTION WAIVER.**
>. . .
>**DISPUTE RESOLUTION.** PLEASE READ THE FOLLOWING SECTION CAREFULLY BECAUSE IT REQUIRES YOU TO ARBITRATE CERTAIN DISPUTES AND CLAIMS WITH US AND LIMITS THE MANNER IN WHICH YOU CAN SEEK RELIEF FROM US.

> You agree that any dispute between you and Chime arising out of or relating to this Agreement or the Services (collectively, "Disputes") will be governed by the arbitration procedures outlined below.

Srivastava Reply Decl. Ex. B at 2, 9 (emphasis in original). The agreement then outlines the terms of the binding arbitration provision, and provides that users may opt-out of the arbitration provision within 30 days of acceptance. *Id.* at 9. Ms. Srivastava has attested that "Chime maintains records of members who have opted out of the arbitration agreement," and that "Chime has not been able to locate any record of Plaintiff opting out." Srivastava Decl. ¶ 8. Plaintiff, moreover, has not submitted any evidence establishing that she opted out within the required 30-day period.

## STANDARD OF REVIEW

Under the FAA, 9 U.S.C. § 4, "a district court must enter an order to arbitrate upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 n.27 (1983).[2] In resolving a claim that an action must be arbitrated pursuant to an arbitration agreement, a court must decide "(1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001) (omission in original); *see also Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73–74 (2d Cir. 2017).

If a movant demonstrates the existence of an agreement to arbitrate, the burden shifts to the non-movant to "show that: (i) she did not consent to arbitration, (ii) the arbitration agreement is invalid or unenforceable, or (iii) the arbitration agreement does not encompass her claims."

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, omissions, and alterations.

*Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17 Civ. 04570 (LAK)(KHP), 2017 WL 7309893, at *2 (S.D.N.Y. Nov. 20, 2017), *report and recommendation adopted as modified*, No. 17 Civ. 4570 (LAK), 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018).

"In deciding motions to compel, courts apply a 'standard similar to that applicable for a motion for summary judgment.'" *Nicosia*, 834 F.3d at 229 (quoting *Bensadoun v. Jobe-Riat,* 316 F.3d 171, 175 (2d Cir. 2003)). A court must therefore "consider all relevant, admissible evidence submitted by the parties" and "draw all reasonable inferences in favor of the non-moving party." *Id*. "Accordingly, if the proponent of arbitration makes out a *prima facie* case for the existence of an agreement to arbitrate, the burden shifts to the adverse party to come forward with competent admissible evidence that, if credited and given all reasonable inferences in favor of that party, would raise a genuine issue of fact for trial." *Bernardino*, 2018 WL 671258, at *1.

## DISCUSSION

### I. Existence of an Arbitration Agreement

The parties first dispute which state's law should govern the dispute. Plaintiff argues that New York law should apply, whereas Defendants argue that Delaware law should apply because of a Delaware choice-of-law provision in the 2021 DAA. Defs.' Br. at 12; *see also* Pl.'s Opp. Br. at 4–5. While the 2021 DAA contains a Delaware choice-of-law provision, the 2019 DAA—the relevant agreement—contains a California choice-of-law provision. Defendants argue that California and Delaware contract law are substantially similar regarding the enforcement of arbitration agreements, and the distinction is therefore not dispositive. Defs.' Reply Br. at 4 n.2.

Determining whether parties have entered into an agreement to arbitrate is the "threshold question facing any court considering a motion to compel arbitration." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012). "Whether or not the parties have agreed to arbitrate is a

question of state contract law." *Schnabel*, 697 F.3d at 119.  However, "[a]pplying [a] choice-of-law clause to resolve the contract formation issue would presume the applicability of a provision before its adoption by the parties has been established." *Id.*  Applying New York's choice-of law analysis for contract claims, the Court must next consider whether an actual conflict exists between the state laws that are implicated. *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998).

The Court finds that there is no actual conflict between New York, Delaware, or California contract law on the question of whether parties have assented to a contract.  *See, e.g.*, *Kulig v. Midland Funding, LLC*, No. 13 Civ. 4715 (PKC), 2013 WL 6017444, at *4 (S.D.N.Y. Nov. 13, 2013) ("Although the record as it stands indicates that New York law likely applies to the issue of contract formation [for purposes of resolving motion to compel arbitration], the Court needs not resolve this issue because the same result would follow under the law of either [New York or Delaware].");  *Meyer*, 868 F.3d at 74 ("New York and California apply substantially similar rules for determining whether the parties have mutually assented to a contract term.").  Since there is no conflict, the Court will apply New York law.  *See Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004) ("In the absence of substantive difference, . . . a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it.").

Under New York law, in order for a contract to be binding, there must be a "meeting of the minds" and "a manifestation of mutual assent." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019).  Web based agreements have "not fundamentally changed the principles of contract."  *Register.com v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004).  Agreements known as "clickwrap agreements" require "users to click an 'I agree' box after being presented with a list of terms and conditions of use." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017).  "Courts

7

routinely uphold clickwrap agreements for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'" *Id.* "However, in order to be bound by an arbitration agreement contained in a clickwrap agreement, the web-user must have reasonable notice of the arbitration provision." *Zheng v. Live Auctioneers LLC*, No. 20-CV-9744 (JGK), 2021 WL 2043562, at *4 (S.D.N.Y. May 21, 2021).

Plaintiff argues that "Defendants fail to satisfy their evidentiary burden of demonstrating that the parties entered into the DAA." Pl.'s Opp. Br. at 6. She does not contend that her dispute falls outside the scope of the arbitration agreement, nor does she argue that the arbitration agreement is unconscionable or otherwise unenforceable. Therefore, the question of whether Defendants can compel arbitration turns solely on whether the parties entered into a binding contract to arbitrate. The Court finds that they did.

As an initial matter, the Court agrees with Plaintiff that the 2021 agreements attached to Ms. Srivastava's initial declaration do not govern because they came into effect *after* Plaintiff closed her Chime account. Defendants, however, corrected this error by attaching to Ms. Srivastava's reply declaration the 2019 DAA and 2019 Member Agreements, which were both in effect in February 2020, when Ms. Flores created her account. *See* Srivastava Reply Decl. Exs. A & B; Srivastava Reply Decl. ¶¶ 7–8. Ms. Flores did not respond in any way to the filing of these agreements, such as by seeking leave to file a sur-reply or a supplemental declaration. The Court therefore considers the 2019 agreements as evidence. *See, e.g.*, *Bernardino*, 2017 WL 7309893, at *6 n.3 ("Bernardino had a full opportunity to evaluate that evidence and submit a sur-reply in response to it. Thus, she is not prejudiced by B&N's submission on reply or this Court's consideration of it."); *Zheng*, 2021 WL 2043562, at *6 ("[P]laintiff could have requested leave to

file a sur-reply brief or a supplemental declaration in response to Cummings's Supplemental Declaration but chose not to do so.").

It is clear from the 2019 agreements that the parties did enter into a valid contract to arbitrate. Given the steps that a potential Chime user must complete in order to create an account, as outlined in Ms. Srivastava's sworn declaration, Ms. Flores would not have been able to create a Chime account without affirmatively agreeing to the terms and conditions on the page with the clickwrap agreement, and accordingly, no reasonable trier of fact could find that she did not assent to the arbitration.[3] *See Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 832 (S.D.N.Y. 2020) ("By signing up for Postmates' service, Feld manifested assent to the [Terms of Service], even if she did not click on the hyperlink to read the contract."); *see also Starke v. Gilt Groupe, Inc.*, No. 13 Civ. 5497 (LLS), 2014 WL 1652225, at *3 (S.D.N.Y. Apr. 24, 2014) (plaintiff assented by clicking "Shop Now" on site that informed users that doing so would subject them to the site's "Terms of Membership"). Moreover, Ms. Flores had reasonable notice of the arbitration provisions, as the agreements were highlighted in green and hyperlinked directly next to the check boxes, and both contained bolded, capitalized, and otherwise conspicuous text. Srivastava Reply Decl. Exs. A & B; *see also Starke*, 913 F.3d at 292; *Zheng*, 2021 WL 2043562, at *4.

---

[3] Plaintiff argues that "the Court should ignore all the documents proffered by Ms. Srivastava" because she is not a "qualified witness." Pl.'s Br. at 7. The Court disagrees. Courts give the term "qualified witness" a "very broad interpretation." *United States v. Gammal*, 831 F. App'x 539, 543 (2d Cir. 2020)). A person testifying to the admissibility of business records need only show that they are "familiar with the record-keeping system of the business in question and [knows] how the records were created." *Kasper Glob. Collection & Brokers, Inc. v. Glob. Cabinets & Furniture Mfrs., Inc.*, 952 F. Supp. 2d 542, 572–73 (S.D.N.Y. 2013). Ms. Srivastava attests that, "[a]s Associate Litigation Counsel at Chime, [she] regularly access[es] Chime account-related documents and agreements that govern Chime accounts, . . . and [she is] fully familiar with Chime's practices of maintaining such documents in the ordinary course of its business." Srivastava Reply Decl. ¶ 2. As such, the Court finds her to be a qualified witness.

Plaintiff does not dispute that she successfully created a Chime account, which required her to agree to the terms. Rather, she alleges that she "do[es] not recall which screens were displayed during the Chime accounts sign up process." Flores Decl. ¶ 13. While that may be true, it does not create an issue of fact as to whether she assented to the contract's terms. *See Moise v. Family Dollar Stores of New York*, No. 16 Civ. 6314 (RA), 2017 WL 2378193, at *3 (S.D.N.Y. June 1, 2017) ("Moise's claim that he does not 'recall' receiving the Agreement does not create a genuine dispute as to whether he signed it. It is well-established that a 'mere assertion that one does not *recall* signing a document does not, by itself, create an issue of fact as to whether a signature on a document is valid—especially in the absence of any evidence the document was fabricated.'").

Finally, Ms. Flores has not shown that she validly opted out of the arbitration provisions. The 2019 Member Agreement allows users to opt-out of the arbitration provision within 30 days of acceptance. Srivastava Decl. Ex. B. Ms. Srivastava attested that "Chime maintains records of members who have opted out of the arbitration agreement," and that "Chime has not been able to locate any record of Plaintiff opting out." Srivastava Decl. ¶ 8. While Ms. Flores's declaration states that she opted out of the agreement via email, her email seeking to do so was sent nearly three weeks after Ms. Srivastava had already filed her declaration in this lawsuit attesting that Chime never received Ms. Flores's opt-out, eight months after her Chime account was closed, and seventeen months after she was permitted to do so in accordance with the terms of the agreement. *See* Srivastava Decl. Ex. A (Ms. Flores opened her Chime account on February 12, 2020); Srivastava Reply Decl. Ex. B at 9 (2019 Member Agreement permitting users to opt-out of the arbitration provision within the first 30 days of accepting the agreement); Flores Decl. ¶ 5 (Ms. Flores's Chime account was closed in December 2020); Srivastava Decl. (filed with the

10

Court on July 23, 2021); Flores Decl. Ex. 2 (email to Chime purporting to opt-out sent on August 12, 2021).

Because Defendants have demonstrated the existence of a valid agreement to arbitrate, and because Plaintiff has failed to show that she did not consent, that the arbitration agreement was invalid or otherwise unenforceable, or that it did not encompass her claims, the Court grants Defendants' motion to compel arbitration.

**II.   Stay**

Section 3 of the FAA directs a district court to stay proceedings if "satisfied that the issue involved in such suit or proceeding is referable to arbitration under [an agreement in writing to arbitrate]." 9 U.S.C. § 3; *see also WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997) ("[A] district court must stay proceedings if satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding."). Because the Court has determined that this action is referable to arbitration, it is stayed pending arbitration in accordance with the terms of the agreement.

## CONCLUSION

For the foregoing reasons, Defendants' motion to compel arbitration and to stay further proceedings is granted. The parties shall submit a status letter within one week of the conclusion of arbitration, but in any event, no later than September 24, 2022. The Clerk of Court is respectfully directed to terminate the motion pending at Docket 17.

SO ORDERED.

Dated:   March 23, 2022
         New York, New York

_____
Ronnie Abrams
United States District Judge